The Hon. John C. Coughenour

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| JENNY M. JOHNSON, individually and on behalf of a class of persons similarly situated, and on behalf of the Providence Health & Services 403(b) Value Plan, the Providence Health & Services Multiple Employer 401(k) Plan and the Providence Health & Services 401(a) Service Plan,<br><br>Plaintiff,<br><br>v.<br><br>PROVIDENCE HEALTH & SERVICES, PROVIDENCE HEALTH & SERVICES HUMAN RESOURCES COMMITTEE, THE RETIREMENT PLANS COMMITTEE, THE INVESTMENT REVIEW COMMITTEE and JOHN AND JANE DOES #1-25,<br><br>Defendants. | No.  C17-1779 JCC<br><br><br>**AMENDED COMPLAINT—CLASS ACTION** |

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff, Jenny M. Johnson, with the consent of Defendants, Providence Health & Services, Providence Health & Services Human Resources Committee, and John and Jane Does #1-25, files Amended Class Action Complaint:

LAW OFFICES OF<br>CLIFFORD A. CANTOR, P.C.<br>627 208th Avenue SE<br>Sammamish, Washington 98074-7033<br>Tel: (425) 868-7813  •  Fax: (425) 732-3752

## I.   INTRODUCTION

1.      Plaintiff Jenny M. Johnson, individually and on behalf a class of all other persons similarly situated ("Plaintiff") in the Providence Health & Services 403(b) Value Plan (the "403(b) Plan"), the Providence Health & Services Multiple Employer 401(k) Plan (the "401(k) Plan") and the Providence Health & Services 401(a) Service Plan (the "401(a) Plan") (collectively, the "Plans"), and on behalf of the Plans, brings this action for breach of fiduciary duty and prohibited transactions under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and Washington law, against Providence Health & Services ("Providence"), the Providence Health & Services Human Resources Committee (the "HR Committee"), the Retirement Plans Committee and the Investment Review Committee and the members of each committee during the proposed class period ("Jane and John Does 1–25").

2.      Throughout the Class Period (defined below), Defendants allowed the Plan's recordkeeper, Fidelity, to receive excessive and unreasonable compensation through: (1) direct "hard dollar" fees paid by the Plan to Fidelity; (2) indirect "soft dollar" fees paid to Fidelity by non-Fidelity managed mutual funds added and maintained in the Plans to generate fees to Fidelity; (3) fees collected directly by Fidelity from Fidelity-managed mutual funds, added and maintained in the Plan to generate fees to Fidelity; and (4) float interest, freedom to market rollover-materials to the Plans' participants, and other forms on indirect compensation.

3.      In order to provide for these revenue streams, Defendants selected excessively expensive mutual funds — to the exclusion of superior alternatives — which in turn paid Fidelity out of the excessive fees they collected from the Plans' investments.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

4.     These mutual funds collectively underperformed superior alternative funds for a variety of reasons, including the fact the alternatives charged lower fees by, among other things, removing the additional payments to Fidelity.

5.     Only in 2016 did Defendants begin to capture some of these excessive fees for the benefit of the Plans and move the Plans' assets into less expensive (and often otherwise identical) investment alternatives.

6.     Plaintiff brings this action by and through their undersigned attorneys based upon their personal knowledge and information obtained through counsel's investigation and discovery efforts in the case thus far.

## II.    NATURE OF THE ACTION

7.     The obligations of retirement plan fiduciaries to the participants  and beneficiaries of a plan are "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598, 602  (8th Cir. 2009).

8.     When selecting investments for a retirement plan, plan fiduciaries are required to: perform with undivided loyalty; act prudently; and defray reasonable plan expenses. ERISA §404(a)(1), 29 U.S.C. §1104(a)(1); R.C.W. 11.100.045 ("A fiduciary shall manage and invest trust assets solely in the interests of the trust beneficiaries."); *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1828 (2015) (fiduciaries have "duty to exercise prudence in selecting investments at the outset.").

9.     For both ERISA and non-ERISA retirement plans, fiduciaries also have  a continuing duty to monitor investments and remove imprudent ones.  *Tibble*, 135 S.Ct. at 1828-29 (citing Uniform Prudent Investor Act at § 2 and Bogert, Law of Trusts and Trustees at § 684 (3d Ed. 2009)).

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 3 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

10.     Defendants, who during the Class Period are or were fiduciaries of the Plans, have violated their fiduciary duties owed to the Plans and their participants, including Plaintiff.

11.     Defendants, during the Class Period, were responsible for selecting, monitoring, and removing the investments in the Plans. The individual Defendants were officers or employees of Providence. Instead of acting for the exclusive benefit of the Plans and their participants and beneficiaries when managing the Plans' assets, Defendants forced the Plans into investments that charged excessive fees that benefitted Fidelity at the expense of the Plans.

12.     This class action is brought on behalf of participants in the Plans who participated from November 28, 2011 through the present (the "Class Period").

III.   JURISDICTION AND VENUE

13.     **Subject Matter Jurisdiction.** This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it is a civil action arising under the laws of the United States, and pursuant to ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to Plaintiff's other claims in this action that they form part of the same case or controversy.  This Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs, and there is diversity of citizenship between some members of the class and some defendants.

15.     **Personal Jurisdiction.** This court has personal jurisdiction over each of the Defendants because they reside and/or transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process, ERISA §502(e)(2), 29

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

U.S.C. §1132(e)(2), and the Plans are and were administered in this District and the actions complained of took place in this District. This Court also has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in Washington.

16.    **Venue.** Venue is proper in this District pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because the Plans are and were administered in Renton, Washington, within this District, the actions complained of took place in this District, and/or a Defendant resides or may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. §1391 because a defendant resides and/or does business in this District and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## IV.  PARTIES

17.    Plaintiff Jenny M. Johnson is a resident of Tacoma, WA. She participated in each of the Plans during the entire Class Period.

18.    Plaintiff's individual accounts in the Plans were invested in the Fidelity Freedom 2040 Fund, where her retirement assets were invested during the Class Period. Plaintiff, like substantially all participants and beneficiaries of the Plans, was not provided any information regarding the substance of deliberations, if any, of Defendants concerning the Plans' menu of investment options or selection of service providers during the Class Period. Plaintiff otherwise had no knowledge of the substance of the deliberations, or of the nature of the investments offered in the Plans beyond what was provided to her by the Plans.

19.    Defendant Providence Health & Services, the sponsor of each of the Plans, is a health care system operating in approximately 900 locations across the western United States, with its principal place of business in Renton, Washington.

Law Offices of
Clifford A. Cantor, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

20.     Defendant Providence Health & Services Human Resources Committee (the "HR Committee") is comprised of employees of Providence. The HR Committee performs administrative functions for the 403(b) Plan and the 401(k) Plan, including the authority to determine the investment funds made available under these plans and to develop and oversee the implementation of any investment education program.

21.     Defendant the Retirement Plans Committee is comprised of employees of Providence.  The Retirement Plans Committee is the plan administrator for the 401(a) Plan and has the obligation to oversee all aspects of the 401(a) Plan, including its investment options.

22.     Defendant the Investment Review Committee is comprised of employees of Providence and is responsible for selecting, monitoring and removing the investment options for each of the Plans.

23.     Defendants Jane and John Does 1–25 are members of the HR Committee, the Retirement Plans Committee, the Investment Review Committee and/or Providence executives in charge of Human Resources during the Class Period, who are unknown to Plaintiff.

24.     Defendants are, or during the Class Period were, fiduciaries to the Plans within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii) or R.C.W. § 11.100.130, and parties in interest to the Plans within the meaning of ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

## V.   FACTS

### A.  The Plans and Their Administration

#### 1.       The 403(b) Plan

25.      The 403(b) Plan is an employee benefit plan within the meaning of ERISA §3(3), 29 U.S.C. §1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA §4(a), 29 U.S.C. §1003(a).

26.      The 403(b) Plan is also an "employee pension benefit plan" or "pension plan" as defined by ERISA §3(2)(A), 29 U.S.C. §1002(2)(A), and "defined contribution plan" or "individual account plan" within the meaning of ERISA §3(34), 29 U.S.C. §1002(34).

27.      The 403(b) Plan covers eligible employees of Providence, including its subsidiaries.

28.      Providence is the Plan Administrator for the 403(b) Plan. Accordingly, it is responsible for selecting, monitoring, and removing the investment options in the 403(b) Plan. At some or all times during the Class Period, it designated the HR Committee and the Investment Review Committee to carry out this duty.

29.      Participants in the 403(b) Plan can direct the investment of the assets allocated to their individual accounts into the investment options approved by the HR Committee and/or the Investment Committee and offered by the 403(b) Plan, and the return on those investments are credited to each participant's account. Participants who do not direct the investment of the assets are invested in the 403(b) Plan's default investment option, the Fidelity Freedom target date funds.

30.      During the Class Period, the 403(b) Plan has invested in at least 50 different investment options, of which 17 were managed by Fidelity and at least 24 more paid revenue-sharing to Fidelity.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

31.     The 403(b) Plan's benefits are funded by participants' voluntary tax-deferred and after-tax (Roth) contributions and by employer matching contributions.

32.     The 403(b) Plan's most recent Form 5500 filing with the U.S. Department of Labor states that at the end of the 2017 plan year the Plan had 85,281 participants with account balances.

33.     At all relevant periods, Fidelity served, and continues to serve, as the 403(b) Plan's Recordkeeper.

### 2.     The 401(k) Plan

34.     The 401(k) Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

35.     The 401(k) Plan is also an "employee pension benefit plan" or "pension plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and a defined contribution plan or "individual account plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

36.     Providence established the 401(k) Plan effective July 1, 2007, as a consolidation of the retirement plans of certain affiliates and subsidiaries.  Since it was established, other retirement plans of other subsidiaries and affiliates have merged into the 401(k) Plan.

37.     The 401(k) Plan covers eligible employees of Providence and its affiliates, including Swedish Health Services, Swedish/Edmond, Providence Specialty Medical Group, PacMed Clinics, Kadlec Regional Medical Center and Providence St. Joseph.  The 401(k) Plan previously covered eligible employees of Washington Cancer Centers, P.C., Providence Physician Services and John Wayne Cancer Institute.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

38.     The Plan Administrator for the 401(k) Plan is the HR Committee.  Under the terms of the 401(k) Plan, the Investment Review Committee is responsible for selecting, monitoring and removing the investment options in the 401(k) Plan.

39.     Participants in the 401(k) Plan can direct the investment of assets allocated to their individual accounts into the investment options approved by the HR Committee and/or the Investment Committee and offered by the 401(k) Plan, and the return on those investments are credited to each participant's account.  Participants who do not select the investment of assets are invested in the 401(k) Plan's default investment option, the Fidelity Freedom target date funds.

40.     During the Class Period, the 401(k) Plan has invested in at least 50 different investment options, of which 17 were managed by Fidelity and at least 24 more paid revenue-sharing to Fidelity.

41.     The 401(k) Plan's benefits are funded by participants' voluntary tax-deferred and after-tax (Roth) contributions and by employer matching contributions.

42.     The 401(k) Plan's most recent Form 5500 filing with the U.S. Department of Labor States that at the end of the 2017 plan year the plan had 12,021 participants with account balances.

### 3.     The 401(a) Plan

43.     The 401(a) Plan is sponsored by Providence and administered by the Retirement Plans Committee.  The 401(a) Plan's purpose "is to provide retirement benefits" to eligible employees of Providence and its subsidiaries.

44.     Providence classifies the 401(a) Plan as a "church plan" within the meaning of Internal Revenue Code § 414(e) and ERISA § 3(33), 29 U.S.C. § 1002(33) and, accordingly, does not consider the plan to be subject to ERISA.  The 401(a) Plan Document provides that it is governed by the laws of the State of Washington.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

45.     At some or all times during the Class Period, the Retirement Plans Committee designated to the Investment Review Committee the responsibility for selecting, monitoring, and removing the investment options in the plan.

46.     Under the terms of the 401(a) Plan, participants have a plan account, similar to the 403(b) Plan and 401(k) Plan.  During each plan year, Providence makes a discretionary employer contribution to participants' plan accounts based on how many years of service they have with Providence.

47.     Participants in the 401(a) Plan can direct the investment of the assets allocated to their individual accounts into the investment options approved by the Retirement Plans Committee and/or the Investment Review Committee and offered by the 401(a) Plan, and the return on those investments are credited to each participant's account. Participants who do not direct the investment of the assets are invested in the 401(a) Plan's default investment option, the Fidelity Freedom target date funds.

48.     During the Class Period, the 401(a) Plan has invested in at least 50 different investment options, of which 17 were managed by Fidelity and at least 24 more paid revenue-sharing to Fidelity.

49.     As of the end of 2016, there were 68,517 participants in the 401(a) Plan.

**B.     The Plans' Recordkeeper's Sources of Compensation**

50.     Each of the Plans is a "defined contribution plan" whereby participants have individual accounts.

51.     The Recordkeeper of defined contribution plans, like the Plans, maintains participant account balances, provides a website and telephone number for participants to monitor and control their plan accounts, and provides various other services to the plan.

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

52.     Recordkeeping services are highly commoditized, with little or nothing distinguishing the services provided by one recordkeeper over another.

53.     For providing various services, third-party plan administrators, record-keepers, consultants, investment managers, and other vendors in the 401(k) industries have developed a variety of pricing and fee structures.

54.      At best, these fee structures are complicated and confusing when disclosed to participants. At worst, they are excessive, undisclosed, and illegal.

55.     During the Class Period, Fidelity was the recordkeeper for the Plans.  The revenue-sharing arrangements between Fidelity and each of the Plans were the same during the Class Period.  And, the Investment Committee was responsible for choosing the Plans' investment options during the Class Period, the Plans' core lineups were substantially similar.  Accordingly, as described below, the Plans suffered similar investment losses due to the imprudent, costly investment options that were in the Plans that paid excessive amounts of revenue sharing to Fidelity.

56.     The compensation Fidelity received for its recordkeeping and administration of the Plans was excessive and unreasonable, and the Defendants breached their fiduciary obligations to ensure that Fidelity's compensation was reasonable.

57.     Providence, the HR Committee, the Retirement Plans Committee in their administration, and the Investment Review Committee in its selection of investments, also failed to have a prudent process for evaluating the amount and reasonableness of the compensation paid to Fidelity. Instead of evaluating the cost of these services in the marketplace, Defendants permitted Fidelity to administer and do the recordkeeping for the Plan without meaningful market competition. At no time before 2016 did Defendants limit or curtail Fidelity's growing

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 11 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

compensation — rather, Fidelity was allowed to generate ever higher fees despite costs which were either stable or falling.

58.     Failing to do so constituted a breach of the duties of prudence and cost the Plans millions of dollars in excessive fees charged directly by Fidelity or collected by Fidelity from the Plans' investment options through revenue sharing.

59.     Defendants caused the Plans to purchase recordkeeping, administration, investment management, and other services from various institutions and entities. The fees paid to Fidelity, are, and have been, unreasonable and excessive; especially in light of the Plans' enormous size and asset value, individually and collectively. In order to provide for this compensation to Fidelity, Defendants have included inferior and imprudently selected investment options as core investments.

60.     Defendants have caused the amounts that the Plans pay for these services to be assessed against the Plans' participants' accounts.

61.     Defendants have caused or allowed Fidelity to receive payment in at least four ways: (1) by direct disbursement from the Plans to the entity providing the service; (2) by receiving, or having the opportunity to receive, "Revenue Sharing" payments comprised of the Plans' assets distributed between or amount various service providers; (3) by profiting from the inclusion of Fidelity-managed mutual funds, which charged fees to all investors, included in the Plans; and (4) through other sources of compensation, including float interest and the Plans' "Brokerage Window."

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 12 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

### 1.     Hard Dollar Payments

62.     Payments in the form of direct disbursements from a retirement plan to an entity providing a service to the plan are characterized as "Hard Dollar" payments or "Direct Compensation".

63.     Plan Sponsors, like Providence, generally disclose, in one form or another, Hard Dollar payments made from a retirement plan to service providers.

64.     When such disclosures are made, understanding the plan's service provider expenses for a given year *appears* straightforward: the plan transfers funds in a stated amount to the provider in return for the provider's services. From this, plan participants and government regulators surmise that the plan expended the stated amount in exchange for the services.

65.     Fidelity received the following Hard Dollar payments from the 403(b) Plan according to forms filed by the Plan with the United States Department of Labor.

| Year | Hard-Dollar Payments |
|------|----------------------|
| 2011 | $88,753 |
| 2012 | $74,700 |
| 2013 | $66,687 |
| 2014 | $71,467 |
| 2015 | $97,639 |

66.     The 401(a) Plan and the 401(k) Plan paid an even higher percentage of their respective plan's assets in "Hard Dollars" to Fidelity in these years.

### 2.     Revenue Sharing Payments From Outside Service Providers

67.     While the hard dollar fees above appear modest, the vast majority of Fidelity's compensation came in the form of Revenue Sharing.

68.     Industry commentators and analysts consider Revenue Sharing as the "big secret of the retirement industry." Industry commentators and analysts generally define Revenue Sharing as

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 13 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

the transfer of asset-based compensation from brokers or investment management providers (such as mutual funds, common collective trusts, insurance companies offering general insurance contracts, and similar pooled investment vehicles) to administrative service providers (record-keepers, administrators, trustees) in connection with 401(k) and other types of defined contribution plans.

69.     For example, a plan or its agent (a third-party administrator, consultant, or similar fiduciary) seeking to invest plan assets in an investment vehicle (a mutual fund, common and collective trust, guaranteed investment contract, etc. (collectively a "Fund")) will negotiate an agreement that sets the costs assessed against each dollar invested by specifying the expense ratio and available Revenue Sharing (which is included within the expense ratio).

70.     In Revenue Sharing arrangements, the plan and the Fund agree upon an asset-based fee (an expense ratio) that is not the true price for which the Fund will provide its service.

71.     Instead, the agreed asset-based fee includes ***both*** the actual price for which the Fund will provide its service ***and*** additional amounts that the Fund does not need to cover the cost of its services and to make a profit.

72.     The additional portion of the agreed-upon asset-based charge is "shared" with plan service providers or others who do business with the plan or the Fund.

73.     As a result of Revenue Sharing arrangements, plan service providers or others who do business with the plan or the Fund receive *both* a Hard Dollar payment from the plan *and* additional revenue that the Fund "shares" with them.

74.     The total fees a Fund charges to a plan can vary widely based upon a number of factors, including without limitation:  the amount that the plan invests in the Fund; the level of sophistication of the plan fiduciary negotiating the fee agreement; the plan fiduciary's awareness

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

of Revenue Sharing and effort to monitor revenue sharing transfers; the diligence with which the plan fiduciary conducts such negotiations; and the separate financial interests and/or agendas of the plan fiduciary and the Fund as they negotiate.

75.    To severely reduce, or eliminate Hard Dollar payments altogether, a plan's fiduciaries and a Fund may agree to set a Fund's asset-based fee (its expense ratio) at a level high enough: (A) to cover the Fund's services and profit; and (B) to provide excess Revenue Sharing more than sufficient to cover all other plan services *and more*. This causes a plan's recordkeeping fees to appear deceptively low in disclosures to Plan participants and government regulators.

76.    When plan service providers receive compensation in the form of both Hard Dollar fees *and* Revenue Sharing payments determining the total amount of fees and expenses that the Plan incurs for any category of services (*i.e.* recordkeeping and administration, investment advisory, trustee, auditing, etc.) requires that *both* the Hard Dollar fees *and* Revenue Sharing payments be taken into account.

77.    Although Revenue Sharing monies arise only as a result of, and in connection with, transactions involving the plan, plan assets, and service providers; Revenue Sharing is not always captured and used for the benefit of the plan and the participants.

78.    In addition, plan fiduciaries may limit their selection of funds to only those funds which provide sufficient revenue sharing, thus foregoing superior investment alternatives and selecting or maintaining inferior investment options based upon revenue sharing relationships. These alternatives include identical share classes of the same mutual funds that charged lower fees because they do not pay revenue sharing, institutional products by the same fund managers which offer materially identical services for even lower cost, or superior alternatives offered by different managers who are unwilling to pay revenue sharing to the Plan recordkeeper.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

79.    Plan fiduciaries may do this to conceal the true amount of compensation paid to the Recordkeeper or to reduce the plan sponsor's cost at the expense of plan participants.

80.    Nearly all of the actively managed mutual funds included in the Plans paid revenue sharing to Fidelity.[1]

81.    In determining whether a plan administrator or other fiduciary has fulfilled its obligation to ensure that the fees and expenses assessed against the plan are reasonable and incurred solely in the interest of plan participants, all sources of compensation, including revenue sharing, must also be taken into account.

82.    Adding revenue sharing from non-Fidelity mutual funds to the Hard Dollar fees discussed above, Fidelity's compensation from external, non-Fidelity funds for the 403(b) Plan, was:

| Year | Hard-Dollar Payments | Non-Proprietary Revenue Sharing | External Compensation Per Participant |
|------|----------------------|----------------------------------|----------------------------------------|
| 2011 | $88,753 | $2,393,005 | $34.80 |
| 2012 | $74,700 | $1,900,649 | $42.53 |
| 2013 | $66,687 | $2,971,151 | $50.12 |
| 2014 | $71,467 | $2,700,088 | $35.43 |
| 2015 | $97,639 | $2,539,550 | $46.81 |

---

[1] The 403(b) Plan's 2015 Form 5500 filings with the Department of Labor do not disclose revenue sharing from the Calvert Social Index I Fund, the Dreyfus High Yield I fund, or the American Funds Large-Cap Growth Fund.

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

83.    The 401(k) Plan and the 401(a) Plan, which had the same revenue-sharing arrangements and investments options as the 403(b) Plan, similarly paid excessive amounts of revenue-sharing to Fidelity based on their respective assets and number of participants.

84.    It was not until 2016 that the Defendants arranged to have a portion of the non-proprietary revenue sharing rebated to the Plans. Defendants' 2016 Form 5500, filed with the United States Department of Labor in October 2017, disclosed that Fidelity received direct compensation of -$1,726,918 in the 2016 Plan year for the 403(b) Plan.  Likewise, the 401(k) Plans' Form 5500 for 2016 disclosed that Fidelity's direct compensation was -$196,123.  The 401(a) Plan's Financial Statements for 2016 showed that the plan's total administrative expenses were $587,481 lower than in 2015.  2016 was the first time Fidelity rebated to the Plans the revenue sharing payments for the benefits of the Plans. Nevertheless, Fidelity received hundreds of thousands of dollars more in revenue sharing from external funds in 2016 than it rebated to the Plans.

### 3.    Revenue Sharing on Fidelity's Funds

85.    In addition to non-Fidelity funds paying revenue sharing to Fidelity, the Plans included at least 17 Fidelity-managed mutual funds, of which 14 were actively-managed funds in which the Plans invested in the "K" share class.

86.    Fidelity routinely offers revenue sharing to other vendors who place investments in the K share class of its funds, and, upon information and belief, attributes revenue sharing payments to its recordkeeping division when, as here, Fidelity is the Plans' recordkeeper.

### 4.    Other Sources of Compensation

87.    Defendants also permitted Fidelity to earn additional compensation at the expense of the Plans' participants.  For example, Defendants permitted Fidelity to earn "float" interest that

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 17 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

Fidelity received.  Because revenue sharing arrangements provide asset-based fees, prudent fiduciaries monitor the total amount of revenue sharing a recordkeeper receives — as well as other compensation such as interest earned on assets moving into and out of the Plan, called "float" — to ensure that the record-keeper is not receiving unreasonable compensation.

88.     The Plans also included investments offered through Fidelity's "Brokerage Link" product, which offered an assortment of mutual funds that paid revenue sharing to Fidelity.

**C.     Defendants' Imprudent Selection and Retention of Investment Options That Paid Fees to Fidelity**

89.     In order to facilitate revenue sharing and proprietary Fidelity Funds in the Plans, Defendants maintained investment options despite no expectation they would outperform cheaper or superior alternatives. A long series of decisions involving proprietary and non-proprietary investments indicate a failure by Defendants to prudently select and monitor the investment options in the Plan.

**1.     Defendants Offered Investment Options That Were Not In The Least Expensive Share Class**

90.     Large retirement plans, like the Plans, have substantial bargaining power to negotiate low fees for investment management services.

> The fiduciaries also must consider the size and purchasing power of their plan and select the share classes (or alternative investments) that a fiduciary who is knowledgeable about such matters would select under the circumstances. In other words, the 'prevailing circumstances'—such as the size of the plan—are a part of a prudent decision-making process. The failure to understand the concepts and to know about the alternatives could be a costly fiduciary breach.

Fred Reish, *Just Out of Reish: Classifying Mutual Funds*, Plan Sponsor Magazine (Jan. 2011).[2]

---

[2] Available at http://www.plansponsor.com/MagazineArticle.aspx?id=6442476537.

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 18 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

91.     Lower-cost institutional share classes of mutual funds are available to institutional investors, like the Plans, that meet the minimum investment amounts for these share classes. In addition, large retirement plans can invest in collective investment trusts or hire investment advisers directly to manage separate accounts for the plan within plan-specific investment parameters and with even lower investment management fees. As the Department of Labor recognized, large defined contribution plans with assets over $500 million "can realize substantial savings" through separate accounts, including "[t]otal investment management expenses can commonly be reduced to *one-fourth* of the expenses incurred through retail mutual funds." U.S. Dep't of Labor Pension & Welfare Ben. Admin., *Study of 401(k) Plan Fees and Expenses* §2.4.1.3 (Apr. 13, 1998) (emphasis added).[3]   Employers like Providence, who sponsor more than one retirement plan, can use the plans' combined assets to negotiate lower fees across all plans.

92.     Despite these lower-cost options, Defendants have invested, and continue to invest, Plans' assets in mutual funds with a higher cost than were and are available for the Plans based on their size, such as separate accounts and collective trusts.

93.     For the *exact same mutual fund option*, the Plans has offered higher-cost share classes of *identical* mutual funds than were available to the Plans, without prudently considering these lower-cost identical alternatives or recapturing the excessive fees for the benefit of the Plans.

94.     The failure to select lower-cost share classes for the Plans' mutual fund options identical in all respects (portfolio manager, underlying investments, structure, and asset allocation) except for cost demonstrates that either Defendants intentionally refused to move the Plans to a cheaper share class, or that it failed to consider the size and purchasing power of the Plans when selecting share classes and engaged in no prudent process in the selection, monitoring, and

---

[3] Available at https://www.dol.gov/ebsa/pdf/401kRept.pdf.

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC                                  - 19 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

retention of those mutual funds. Either explanation constitutes a violation of Defendants' fiduciary obligations to the Plan. *Tibble v. Edison Int'l*, 843 F. 3d 1187, 1198 (9th Cir. 2016) ("[A] trustee cannot ignore the power the trust wields to obtain favorable investment products, particularly when those products are substantially identical — other than their lower cost — to products the trustee has already selected.").

95.     Had the amounts invested in the higher-cost share class mutual fund options instead been invested in the lower-cost share class mutual fund options from November 28, 2011 to the present, Plans participants would have retained substantially more of their retirement savings, which would have grown even larger because it would have remained invested in the Plans.

96.     The high investment management, recordkeeping, and other administrative fees caused the Plans to incur Total Plan Costs — the total percentage of the Plan's assets paid in fees each year — that were higher than what comparable plans paid.

97.     An example of the Defendants' fiduciary breaches is shown by the Plans' Money Market Fund.  Stable value funds and money market funds are two investment vehicles designed to preserve principal while providing a return.

98.     Stable value funds are a common investment in defined contribution plans and in fact are designed specifically for use in large defined contribution plans.

99.     The structure of stable value funds allows them to outperform money market funds in virtually all market conditions and over any appreciable time period. See, *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 806 (7th Cir. 2013); see also Paul J. Donahue, *Plan Sponsor Fiduciary Duty for the Selection of Options in Participant-Directed Defined Contribution Plans and the Choice Between Stable Value and Money Market*, 39 AKRON L. REV.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

9, 20–27 (2006); Sudheer Chava, *Stable Value Analysis*, Working Paper, June 17, 2017

(available at: http://www.prism.gatech.edu/~schava6/SVReport.pdf).

100.    Stable Value Funds hold longer duration instruments generating excess returns over

money market investments, but utilize insurance contracts to negate the change in risk, so that to

the investor returns are both higher and less volatile. Stable value funds also provide a guaranteed

rate of return to the investor, referred to as a crediting rate, and protect against the loss of principal

and accrued interest. This protection is provided through a wrap contract issued by a bank,

insurance company or other financial institution that guarantees the book value of the participant's

investment.

101.    Even during the period of market turbulence in 2008, "stable value participants

received point-to-point protection of principal, with no sacrifice of return[.]" Paul J. Donahue,

*Stable Value Re-examined*, 54 RISKS AND REWARDS 26, 28 (Aug. 2009).[4]

102.    The 403(b) Plan nevertheless invested over $122 million in the Fidelity U.S.

Government Reserves Money Market Fund, a money market fund that paid interest to the Plan of

only 0.01%, while paying fees to Fidelity that were much higher than what was paid to participants.

The 401(a) Plan invested $33 million and 401(k) Plan invested more than $15 million in the same

Fidelity money market fund, paying the same excessive fees.

103.    In 2016, Defendants replaced Fidelity's money market fund in the Plans with a

retail money market fund managed by Vanguard. The Vanguard fund is substantially the same in

terms of risk, structure, and underlying investments, but it has significantly lower expenses and,

as a result, has consistently higher returns (30 bps in 2016 and over 50 bps in 2017).

---

[4] Available at http://www.soa.org/library/newsletters/risks-and-rewards/2009/august/rar-2009-iss54-donahue.pdf.

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 21 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

104.     As with their decisions concerning share classes of mutual funds and the decision not to use cheaper institutional products, the decision to use Fidelity's Money Market Fund served to benefit Fidelity at a significant and predicable cost to the Plans.

105.     Each of the Plans also qualified for institutional money market funds, such as the Vanguard Prime Money Market Fund (Admiral Shares), which charges fees of only 10 bps and has outperformed the Plan's money market fund significantly prior to, and during, the Class Period. Given that the money market funds are virtually identical except for the institutional fund's lower fees and higher performance there is no prudent reason for Defendants to have invested in the retail money market funds.[5] Had Defendants invested in the retail Vanguard Federal Money Market fund instead the retail Fidelity money market fund, Plan would have received higher interest payments during the Class Period.

106.     By favoring the interests of Fidelity in the inclusion of the Fidelity Money Market Fund and by failing to invest in institutionally-priced money market funds, Defendants failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

---

[5] Catherine Valenti, How to Choose a Money Market Fund, March 28, 2011. ("The most important factor in choosing a money market fund is its expense ratio, which can eat away at a fund's return since most money market funds generally have comparable yields."). available at: https://www.thestreet.com/story/1365782/1/how-to-choose-a-money-market-fund.html

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 22 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

2.      **Defendants Selected, And Then Failed To Remove, Poor Performing Investment Options For The Plans**

107.    Defendants' fiduciary duties are among the "highest [duties] known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 (2d Cir. 1982). Consistent with these fiduciary duties, Defendants had a fiduciary duty to Plaintiff, the Plan, and the other participants in the Plan to offer only prudent investment options. A fiduciary has "a continuing duty of some kind to monitor investments and remove imprudent ones" and "a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble*, 135 S.Ct. at 1829.  Defendants therefore breached their fiduciary duty of prudence under ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B) and Washington law.

108.    Defendants systematically maintained actively managed Fidelity and non-Fidelity mutual funds in the Plan despite high fees and poor performance in order to provide revenue sharing to Fidelity, as shown below.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

| Fund | Fee | Category | Alternative | Alt Fee | ICI Median Fee[i] |
|---|---|---|---|---|---|
| Fidelity U.S. Gov. Reserve | 26 bps | Money Market | VMRXX | 10 bps | 10 bps |
| Fidelity Contra | 61 bps | US Equity | VRGWX | 8 bps | 35 bps |
| Fidelity Growth | 77 bps | US Equity | VRGWX | 8 bps | 35 bps |
| Freedom Income | 43 bps | Non-target date balanced | VTINX | 13 bps | 26 bps |
| Freedom 2005 | 49 bps | Target Date | VTINX | 13 bps | 52 bps |
| Freedom 2010 | 49 bps | Target Date | VTENX | 13 bps | 52 bps |
| Freedom 2015 | 52 bps | Target Date | VTXVX | 14 bps | 52 bps |
| Freedom 2020 | 55 bps | Target Date | VTWNX | 14 bps | 52 bps |
| Freedom 2025 | 57 bps | Target Date | VTTVX | 14 bps | 52 bps |
| Freedom 2030 | 60 bps | Target Date | VTHRX | 15 bps | 52 bps |
| Freedom 2035 | 63 bps | Target Date | VTTHX | 15 bps | 52 bps |
| Freedom 2040 | 64 bps | Target Date | VFORX | 16 bps | 52 bps |
| Freedom 2045 | 64 bps | Target Date | VTIVX | 16 bps | 52 bps |
| Freedom 2050 | 64 bps | Target Date | VFIFX | 16 bps | 52 bps |
| WF Emerging Markets | 122 bps | International Equity | VEMIX | 11 bps | 54 bps |
| Ivy Mid-Cap Growth | 99 bps | Domestic Equity | VMGMX | 7 bps | 35 bps |
| NFJ Small Cap Value | 78 bps | Domestic Equity | VSIIX | 6 bps | 35 bps |
| PIMCO Total Return | 71 bps | Domestic Bond | VBIMX | 5 bps | 44 bps |
| Columbia Acorn | 97 bps | Int'l Equity | VFSNX | 12 bps | 54 bps |
| Harbor International Inst'l | 74 bps | Int'l Equity | VFWSX | 10 bps | 54 bps |
| Allianz AGIC Growth A | 101 bps | Domestic Equity | VRGWX | 8 bps | 35 bps |
| Blackrock Global Allocation I | 78 bps | Non-target date balanced | VSMGX | 14 bps | 26 bps |
| Loomis Value N | 57 bps | Domestic Equity | VSPVX | 8 bps | 35 bps |
| Thornburg International Value R5 | 98 bps | Int'l Equity | VTRIX | 7 bps | 54 bps |

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 24 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

| Fund | Fee | Category | Alternative | Alt Fee | ICI Median Fee[i] |
|---|---|---|---|---|---|
| Blackrock US Opps Inst. | 101 bps | Int'l Equity | VEIRX | 17 bps | 54 bps |
| Calvert Capital Accumulation I | 83 bps | Domestic Equity | VMCIX | 5 bps | 35 bps |
| Dreyfus High Yield I | 70 bps | Domestic Bond | VWEAX | 13 bps | 44 bps |
| Invesco International Growth I (R5) | 105 bps | Int'l Equity | VWILX | 33 bps | 54 bps |
| Invesco Real Estate Inst'l (R5) | 100 bps | Other | VGSNX | 7 bps | 63 bps |
| Amana Income (Inv) | 112 bps | Int'l Equity | VRNIX | 8 bps | 54 bps |
| Loomis Value Y | 70 bps | Domestic Equity | VRVIX | 8 bps | 35 bps |
| American Funds Large-Cap Growth | 70 bps | Domestic Equity | VSGWX | 8 bps | 35 bps |
| JPMorgan Large Cap Growth Select | 93 bps | Domestic Equity | VSGWX | 8 bps | 35 bps |
| JPMorgan Large Cap Growth R5 | 54 bps | Domestic Equity | VSGWX | 8 bps | 35 bps |
| Templeton Global Bond Advantage | 63 bps | Int'l Bond | VTIFX | 7 bps | 70 bps |
| American Century Growth Invstmt. | 97 bps | Domestic Equity | VRGWX | 8 bps | 35 bps |
| American Century Growth Inst. | 78 bps | Domestic Equity | VRGWX | 8 bps | 35 bps |
| Artisan Mid Cap Value | 96 bps | Domestic Equity | VMVAX | 7 bps | 35 bps |
| American Century Mid-Cap Value R6 | 63 bps | Domestic Equity | VMVAX | 7 bps | 35 bps |
| Wells Fargo Emerging Mkt Eq6 | 115 bps | Int'l Equity | VEMIX | 11 bps | 54 bps |
| PIMCO Total Return 3 AD | 75 bps | Domestic Bond | VBIMX | 5 bps | 44 bps |
| PIMCO Total Return P | 56 bps | Domestic Bond | VBIMX | 5 bps | 44 bps |

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 25 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

| Fund | Fee | Category | Alternative | Alt Fee | ICI Median Fee[i] |
|---|---|---|---|---|---|
| American Funds Europacific Growth R5 | 53 bps | Int'l Equity | VWILX | 32 bps | 54 bps |
| American Funds Europacific Growth R6 | 50 bps | Int'l Equity | VWILX | 32 bps | 54 bps |
| American Funds Balanced R6 | 40 bps | Non-target date balanced | VSMGX | 14 bps | 26 bps |
| Credit Suisse Commodity Return | 78 bps | Other | COMIX | 65 bps | 63 bps |
| Manning and Napier Pro-Blend Moderate Term I | 81 bps | Non-target date balanced | VSCGX | 13 bps | 26 bps |
| PIMCO Developing Local Markets Admin | 110 bps | Int'l Bond | PLMIX / VGAVX[ii] | 87 bps / 32 bps | 70 bps |
| Dreyfus Boston Company Sm/Md Cap Growth I | 79 bps | Domestic Equity | VMGIX | 19 bps | 35 bps |

109.     For example, the 403(b) Plan has offered 15 different actively-managed Fidelity mutual funds. Of them, 14 have underperformed investible index benchmarks but only one, the money market fund, was removed as a Plan investment option by the Defendants.[6]

110.     Non-proprietary funds offering to pay Fidelity revenue sharing were also added, and continued to be included, in the Plan despite higher fees and lower performance expectations for the future compared to index funds or other investments that would not pay such fees to Fidelity.

---

[6] A second, the Freedom 2000 fund, was terminated by Fidelity and the assets moved into the Fidelity Income Fund.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

111.   Collectively, the Plan's actively managed investments underperformed investible index alternatives each and every year of the Class Period, yet the Plans continues to offer these funds because of the revenue sharing and other profits they provide to Fidelity.

112.   Thus, predictably, for each of the past seven years the Plans would have been better off with index investments.

113.   Defendants' inability to select actively managed funds that outperform the index is consistent with the vast weight of evidence that actively managed funds rarely outperform their indexes and fund pickers cannot reliably determine which mangers are likely to outperform in the future.  Plaintiff does not believe Defendants should have been expected to "beat the market;" rather, that in accordance with their fiduciary duties, Defendants should have systematically reviewed the Plan investment options to ensure they were prudent given their performance and cost.

114.   Academic and financial industry literature shows the importance of low fees in selecting investments. Numerous scholars have demonstrated that high expenses are not correlated with superior investment management. Indeed, funds with high fees on average perform worse than less expensive funds even on a *pre-fee basis*. Javier Gil-Bazo & Pablo Ruiz-Verdu, *When Cheaper is Better: Fee Determination in the Market for Equity Mutual Funds*, 67 J. ECON. BEHAV. & ORG. 871, 873 (2009); see also Jill E. Fisch, *Rethinking the Regulation of Securities Intermediaries*, 158 U. PA. L. REV. 1961, 1993 (2010) ("the most consistent predictor of a fund's return to investors is the fund's expense ratio").

> [T]he empirical evidence implies that superior management is not priced through higher expense ratios. On the contrary, it appears that the effect of expenses on after-expense performance (even after controlling for funds' observable characteristics) is more than one-to-one, which would imply that low-quality funds charge higher fees. Price and quality thus seem to be inversely related in the market for actively managed funds.

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 27 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

Gil-Bazo & Ruiz-Verdu, *When Cheaper is Better*, at 883.

115.    If an individual high-cost mutual fund exhibits market-beating performance over a short period of time, studies demonstrate that outperformance during a particular period is not predictive of whether a mutual fund will perform well in the future. Laurent Barras et al., *False Discoveries in Mutual Fund Performance: Measuring Luck in Estimated Alphas*, 65 J. FIN. 179, 181 (2010); Mark M. Carhart, *On Persistence in Mutual Fund Performance*, 52 J. FIN. 57, 57, 59 (1997)(measuring thirty-one years of mutual fund returns and concluding that "persistent differences in mutual fund expenses and transaction costs explain almost all of the predictability in mutual fund returns"). However, the *worst-performing* mutual funds show a strong, persistent tendency to continue their poor performance. Carhart, *On Persistence in Mutual Fund Performance*, at 57.

116.    To the extent managers show any sustainable ability to beat the market, the outperformance is nearly always dwarfed by mutual fund expenses. Eugene F. Fama & Kenneth R. French, *Luck Versus Skill in the Cross-Section of Mutual Fund Returns*, 65 J. FIN. 1915, 1931–34 (2010); Russ Wermers, *Mutual Fund Performance: An Empirical Decomposition into Stock-Picking Talent, Style, Transaction Costs, and Expenses*, 55 J. FIN. 1655, 1690 (2000).

117.    Nobel Laureate William Sharpe also reached the same conclusion that active managers underperform passive managers net of fees. "Properly measured, the average actively managed dollar must underperform the average passively managed dollar, net of costs." William F. Sharpe, *The Arithmetic of Active Management,* 47 Fin. Analysts J. 7, 8 (January/February 1991).[7]

---

[7] Available at http://www.cfapubs.org/doi/pdf/10.2469/faj.v47.n1.7.

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

118.    The Plans' experiences back this up, with Defendants consistently failing to select managers who outperform investible alternatives.

119.    Prudent fiduciaries of large defined contribution plans conduct an analysis to determine whether actively managed funds are expected to outperform their benchmark net of fees. Prudent fiduciaries then make a reasoned decision as to whether it would be in the participants' best interest to offer an actively managed option for the particular investment style and asset class.

120.    Against this evidence and Defendants' own experience of failing to identify actively managed funds likely to outperform, the most plausible explanation for the active fund's inclusion in the Plans was to facilitate revenue sharing payments and investment management fees to Fidelity in a way that would not alert the Plans' participants to these payments.

## VI.    APPLICABLE FIDUCIARY STANDARDS

121.    The 403(b) Plan and the 401(k) Plan are subject to the terms of ERISA.  ERISA imposes strict fiduciary duties of loyalty and prudence upon Defendants  as fiduciaries of the Plan. ERISA § 404(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest  of the participants and beneficiaries and —
>
> (A)    for the exclusive purpose of:
>
>> (i)    providing benefits to participants and their beneficiaries; and
>>
>> (ii)   defraying reasonable expenses of administering the plan; [and]
>
> (B)    with the care, skill, prudence, and diligence under the  circumstances then prevailing that a prudent man acting in a like capacity and  familiar with such matters would use in the conduct of an enterprise of like  character and with like aims;
>
> (C)    by diversifying the investments of the plan so as to minimize the  risk of large losses, unless under the circumstances it is clearly prudent not to do so[.]

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

122.     ERISA also imposes co-fiduciary duties on plan fiduciaries. ERISA § 405, 29 U.S.C. § 1105, states in relevant part that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1)   if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2)   if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3)   if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

123.     Under ERISA, fiduciaries who exercise discretionary authority or control over the selection of plan investments and the selection of plan service providers must act prudently and solely in the interest of participants and beneficiaries of the plan when performing such functions. Thus, "the duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).

124.     As the Department of Labor explains,

> [T]o act prudently, a plan fiduciary must consider, among other factors, the availability, riskiness, and potential return of alternative investments for his or her plan. [Where an investment], if implemented, causes the Plan to forego other investment opportunities, such investments would not be prudent if they provided a plan with less return, in comparison to risk, than comparable investments available to the plan, or if they involved a greater risk to the security of plan assets than other investments offering a similar return.

DOL Opinion 88-16A (1988).

125.     Pursuant to these duties, fiduciaries must ensure that the services provided to the plan are necessary and that the fees are reasonable:

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 30 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

> Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act prudently and solely in the interest of the Plan participants and beneficiaries … in determining which investment options to utilize or make available to Plan participants or beneficiaries. In this regard, the responsible Plan fiduciaries must assure that the compensation paid directly or indirectly by the Plan to [service providers] is reasonable.

DOL Opinion 97-15A (1997); DOL Opinion 97-16A (1997).

126.    A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of plan participants and beneficiaries. As the Department of Labor has warned:

> [T]he Department has construed the requirements that a fiduciary act solely in the interest of, and for the exclusive purpose of providing benefits to participants and beneficiaries, as prohibiting a fiduciary from subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. In other words, in deciding whether and to what extent to invest in a particular investment, or to make a particular fund available as a designated investment alternative, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficiaries in their retirement income. A decision to make an investment, or to designate an investment alternative, may not be influenced by non-economic factors unless the investment ultimately chosen for the plan, when judged solely on the basis of its economic value, would be equal to or superior to alternative available investments.
> DOL Opinion 98-04A (1998); *see also* DOL Opinion 88-16A (1988). The Department of Labor has repeatedly warned:

> While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

*Meeting Your Fiduciary Responsibilities*, U.S. Dep't of Labor Employee Benefits Security Admin. (Feb. 2012), http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html.

127.  In a separate publication, the Department of Labor writes:

> The Federal law governing private-sector retirement plans, the Employee Retirement Income Security Act (ERISA), requires that those responsible for managing retirement plans -- referred to as fiduciaries -- carry out their responsibilities prudently and solely in the interest of the plan's participants and beneficiaries. Among other duties, fiduciaries have a responsibility to ensure that

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 31 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

the services provided to their plan are necessary and that the cost of those services is reasonable.

\* \* \*

Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

\* \* \*

By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses*, U.S. Dep't of Labor Employee Benefits Security Admin. (Dec. 2011), http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.

128.    ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), provides a cause of action against a party in interest, such as Providence, for participating in a breach of a fiduciary duty by an ERISA plan fiduciary.

129.    ERISA § 405(a), 29 U.S.C. §1105(a), provides a cause of action against a fiduciary, such as Providence, for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty.

130.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or  duties imposed on fiduciaries by Title I ERISA shall be personally liable to make good to the  plan any losses to the plan resulting from each such breach and to restore to the plan any profits  the fiduciary

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

made through use of the plan's assets. ERISA § 409, 29 U.S.C. § 1109, further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

131.     Because Defendants have designated the 401(a) Plan as an ERISA-exempt "church plan," it is subject to the provisions of Washington law that are similar to those in ERISA.

132.     Under R.C.W. § 11.100.020, a trustee must "invest and manage trust assets as a reasonable person would," a standard that requires the trustee to exercise "reasonable care, skill and caution." A trustee must also "administer the trust in the interest of the beneficiaries." *Tucker v. Brown*, 20 Wash.2d 740, 768 (1996).

133.     The duties imposed by Washington law also apply to a trust's fiduciaries, including any person or entity that directly or indirectly controls the trust's investments.   R.C.W. § 11.100.130.

134.     All fiduciaries have a duty to make reasonable efforts to obtain suitable investment returns from the trust assets.  Restatement (Third) of Trusts, § 76, cmt. e.  This duty requires fiduciaries to select investments with risk and return objectives reasonably suited to the trust's purpose, considering among other things: (a) general economic conditions; (b) the possible effect of inflation or deflation; (c) the expected total return from the investments; and (d) the need for regularity of income or appreciation of capital.  R.C.W. §§ 11.100.020(2) and (3).

135.     A trustee or fiduciary who violates these duties is liable to the trust's beneficiaries. R.C.W. § 11.100.130.

## VII.    CLASS ACTION ALLEGATIONS

136.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan fiduciary, participant, beneficiary, or the Secretary of Labor to bring a suit individually on behalf of a plan to recover for the plan the remedies provided under ERISA § 409, 29 U.S.C. § 1109(a).  Washington law

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 33 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

similarly allows the beneficiary of a trust to bring suit against a breaching fiduciary to recover losses to a trust's corpus.  R.C.W. 11.100.130.

137.    In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the plan, as an alternative to direct individual actions on behalf of the 403(b) Plan and the 401(k) Plan under 29 U.S.C. § 1132(a)(2) and (3), and Washington law on behalf of the 401(a) Plan, Plaintiff seeks to certify this action as a class action on behalf of:

> All current and former participants in the Plans, or in any plan merged into the Plans, or in any successor plan merged into which the Plans may be merged, who maintained a balance of any amount in the Plans from November 28, 2011 to the date of judgment. Excluded from the class are Defendants, Defendants' beneficiaries, and Defendants' immediate families.

138.    Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

139.    The class satisfies the numerosity requirement of Rule 23(a) because it is composed of over eighty-five thousand persons, in numerous locations. The number of class members is so large that joinder of all its members is impracticable.

140.    The class satisfies the commonality requirement of Rule 23(a) because there are questions of law and fact common to the Class and these questions have common answers. Common legal and factual questions include, but are not limited to: (a) who are the fiduciaries liable for the remedies provided by ERISA § 409(a), 29 U.S.C. §1109(a) and R.C.W. 11.100.010 *et seq.*; whether the fiduciaries of the Plan breached their fiduciary duties to the Plans by causing the Plans to invest in excessively expensive funds and by failing to prudently remove the funds from the Plans; whether the decision to include and not to remove a fund was made solely in the interests of the Plans' participants and beneficiaries; what are the losses to the Plan resulting from

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 34 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

each breach of fiduciary duty; and what are the profits of any breaching fiduciary that were made through the use of the Plans assets by the fiduciary.

141.    The class satisfies the typicality requirement of Rule 23(a) because Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff's claims, and the claims of all Class members, arise out of the same conduct, policies and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct. Plaintiff was and remains an investor in the Plan for the entirety of the Class Period.

142.    The class satisfies the adequacy requirement of Rule 23(a). Plaintiff will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA and breach of fiduciary duty class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

143.    Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

144.    In the alternative, certification under Rule 23(b)(2) is warranted because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

145.    In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## VIII.    CLAIM FOR RELIEF – Breach of Fiduciary Duty

146.    Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

147.    Defendants are responsible for selecting, monitoring, and removing investment options in the Plans.

148.    Defendants caused the Plans to invest in imprudent investment options, many of which were more expensive than prudent alternatives, unlikely to outperform their benchmarks, and laden with excessive fees which facilitated revenue-sharing payments back to Fidelity.

149.    Defendants failed to remove the funds even though a prudent fiduciary would have done so given the high fees, poor performance prospects, and availability of lower-cost alternatives.

150.    By the conduct and omissions described above, Defendants failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) and R.C.W. § 11.100.020.

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC
- 36 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

151.    Defendants failed to discharge their duties with respect to the Plans with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) and R.C.W. § 11.100.020.

152.    As a direct and proximate result of these breaches of fiduciary duties, the Plans and their participants have paid, directly and indirectly, substantial excess investment management and other fund-related fees during the Class Period, and suffered lost-opportunity costs which continue to accrue, for which Defendants are jointly and severally liable pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and R.C.W. § 11.100.130.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    A declaration that the Defendants breached their applicable fiduciary duties under ERISA § 404 and R.C.W. §§ 11.100.020 and 11.100.045;

B.    An order compelling the Defendant to restore all losses to the Plan arising from Defendants' fiduciary breaches, including lost-opportunity costs;

C.    An order granting equitable restitution and other appropriate equitable monetary relief against Defendants;

D.    Such other equitable or remedial relief as may be appropriate, including the permanent removal of Defendants from any positions of trust with respect to the Plans, the appointment of independent fiduciaries to administer the Plans, and rescission of the Plans' investments in revenue-sharing mutual funds;

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

E.     An order certifying this action as a class action, designating the Class to receive the amounts restored or disgorged to the Plan, and imposing a constructive trust for distribution of those amounts to the extent required by law;

F.     An order enjoining Defendants collectively from any further violations of their fiduciary responsibilities, obligations, and duties;

G.     An order awarding Plaintiff and the Class their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or the Common Fund doctrine, and post-judgment interest; and

H.     An order awarding such other and further relief as the Court deems equitable and just.

Dated: January 25, 2019

*s/ Cliff Cantor*
By: Cliff Cantor, WSBA # 17893
LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074
Tel:     (425) 868-7813
Fax:     (425) 732-3752
email: cliff.cantor@outlook.com

*Liaison Counsel for Plaintiff*

IZARD KINDALL & RAABE LLP
Mark P. Kindall, *pro hac vice*
Douglas P. Needham, *pro hac vice* pending
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel:     (860) 493-6292
Fax:     (860) 493-6290
email: mkindall@ikrlaw.com
email: dneedham@ikrlaw.com

BAILEY & GLASSER LLP
Gregory Y. Porter, *pro hac vice*
Mark G. Boyko, *pro hac vice*
Michael L. Murphy

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 38 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074-7033
Tel: (425) 868-7813  •  Fax: (425) 732-3752

8012 Bonhomme Ave. Suite 300
Clayton, MO 63105
Tel:     (314) 863-5446
Fax:     (314) 863-5483
email:  gporter@baileyglasser.com
email:  mboyko@baileyglasser.com
email:  mmurphy@baileyglasser.com

KESSLER TOPAZ MELTZER & CHECK
Mark K. Gyandoh, *pro hac vice*
280 King of Prussia Rd.
Radnor, PA 19087
Tel:     (610) 667-7706
Fax:     (610) 667-7056
email:  mgyandoh@ktmc.com

*Lead Counsel for Plaintiff*

AMENDED COMPLAINT—CLASS ACTION
No. C17-1779 JCC

- 39 -